Filed 2/6/25  P. v. Lopez CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO


THE PEOPLE,

    Plaintiff and Respondent,

v.

STEVEN LOPEZ,

    Defendant and Appellant.

E083680

(Super.Ct.No. INF1600709)

OPINION


APPEAL from the Superior Court of Riverside County.  Anthony R. Villalobos, Judge.  Affirmed.

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorneys General, Eric A. Swenson and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Steven Lopez was found guilty of second degree murder and the jury found true the special allegation that he personally used a firearm causing great bodily injury or death within the meaning of Penal Code[1] section 12022.53, subdivision (d), for shooting the victim while at a friend's house.

Defendant filed a prior appeal claiming, among other things, that the trial court erred by refusing to consider reducing his conviction of personally using a firearm under section 12022.53, subdivision (d), to a lesser firearm enhancement. In an unpublished opinion *People v. Steven Lopez* (Jul. 28, 2020, E071797) [nonpub. opn.][2] we ruled—based on the state of the law at the time—that the trial court only had discretion to strike or impose the section 12022.53, subdivision (d), enhancement and affirmed his sentence. We rejected defendant's remaining issues ordering only that the abstract of judgment be modified. Defendant filed a petition for review in the California Supreme Court, which was granted on the sole issue of whether the trial court had the discretion to reduce the conviction of personally using a firearm pursuant to section 12022.53, subdivision (d), to a lesser firearm enhancement that was not charged.

On April 27, 2022, the Supreme Court transferred the matter back to this court with instructions to vacate our previous decision in its entirety and reconsider the cause in light of *People v. Tirado* (2022) 12 Cal.5th 688 (*Tirado*), which concluded that trial courts are permitted to strike a firearm enhancement under section 12022.53,

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] We have taken judicial notice of all the records in case No. E071797.

subdivision (d), and impose a lesser, uncharged firearm enhancement in its place. In

*People v. Lopez* (July 14, 2022, E071797) [nonpub. opn.] (Opinion) we remanded the

matter to the trial court with directions to resentence defendant. On remand, the trial

court declined to impose a lesser enhancement and resentenced defendant to 40 years to

life.

On appeal, defendant contends for the first time that the trial court erred by failing

to consider its sentencing discretion under section 1385, subdivision (c)(2)(C), which

provides for dismissal of an enhancement if the resulting sentence would exceed 20

years. Such failure to consider section 1385, subdivision (c)(2), violated his federal due

process rights and requires remand for another resentencing. The People contend

defendant forfeited this claim on appeal by not objecting to the trial court's failure to

exercise its discretion by considering section 1385. Anticipating such argument,

defendant contends he received ineffective assistance of counsel.

## PROCEDURAL HISTORY

Defendant was found guilty of one count of second degree murder (§ 187; count

1). The jury also found true the special allegation that defendant personally used a

firearm causing great bodily injury or death within the meaning of section 12022.53,

subdivision (d).[3] Defendant was sentenced to 40 years to life. In the prior appeal, we

upheld defendant's convictions, including rejecting that resentencing was required for the

---

[3] Section 12022.53 was amended effective January 1, 2022. (Stats. 2021, ch. 626 (A.B. 1171), eff. Jan. 1, 2022.) None of the changes impact the issues in this case. We refer to the current version of section 12022.53 when referenced.

trial court to properly exercise its discretion to strike or impose a lesser enhancement on the firearm enhancement. The California Supreme Court granted review and returned the case to this court to reconsider our decision after *Tirado*. We vacated defendant's sentence and remanded to the trial court for it to consider imposing a lesser enhancement. In our Opinion, we advised the trial court that it should apply "all newly enacted sentencing laws on remand that are applicable." As will be discussed in more detail *post*, the trial court imposed the same 40-years-to-life sentence, including imposing the full 25-years-to-life sentence on the section 12022.53, subdivision (d), enhancement.

## FACTUAL HISTORY[4]

### A. THE SHOOTING

Defendant, who was 18 years old at the time, went to a friend's house on May 26, 2016. The victim was also at the house. Defendant and victim were good friends. Defendant, his friend, and the victim all were talking in one of the bedrooms. Several other people arrived at the house but stayed in the living room. The victim and defendant both had guns that they were showing off to each other. The gun possessed by defendant would have taken .40- or .45-caliber bullets. Defendant's friend left the bedroom, and the victim and defendant were left alone. A few minutes later, persons at the home heard gunshots outside the home.

Next-door neighbors observed a man holding a gun with both hands, shooting toward the house. The victim was found outside on the front lawn. The victim was

---

[4] We present a summary of the facts derived from the Opinion.

4

kneeling on the ground holding his stomach. There was a .38-caliber gun nearby on the lawn and .45-caliber expended casings were found near the victim. Defendant was seen getting on his motorcycle and riding away after the shooting. The victim was taken to the hospital where he later died from multiple gunshot wounds to his torso, buttocks, right arm, and left arm. Defendant was apprehended in a car being driven by his girlfriend on May 30, 2016. The vehicle was searched. Hidden in a panel on the passenger's side of the vehicle where defendant had been sitting was a key to a motorcycle and a .38-caliber gun

## DISCUSSION

Defendant contends this court should vacate his sentence and once again remand to the trial court for it to exercise its discretion to strike the firearm enhancement found true by the jury pursuant to section 12022.53, subdivision (d), based on the trial court failing to consider section 1385, subdivision (c)(2), at the time of resentencing. Section 1385, subdivision (c), was added by Senate Bill No. 81 (Stats. 2021, ch. 721) in 2022, which was after defendant's original sentencing but prior to the resentencing. Defendant insists that under section 1385, subdivision (c)(2)(C), which states that an enhancement shall be dismissed if the application of the enhancement could result in a sentence of over 20 years, required the dismissal of the weapon use enhancement. Since the trial court did not consider section 1385, subdivision (c)(2)(C), at the time of resentencing, remand is required. The People contend that defendant waived the claim by failing to object on these grounds in the lower court. Defendant contends that if this court finds that the claim has been forfeited, he received ineffective assistance of counsel.

5

A.    ADDITIONAL FACTUAL HISTORY

As stated, this court remanded the matter for the trial court to exercise its discretion under *Tirado* and to apply any newly enacted sentencing laws at the time of resentencing. The resentencing took place on April 12, 2024. Defendant stated on the record to the victim's family that he was sorry. He also said that the victim had a gun, and when he saw it, he shot the victim. The victim's sister stated that although the family forgave defendant, they wanted justice for what he had done.

Defendant's counsel advised the trial court that after *Tirado*, the trial court had the discretion to impose or strike the enhancement, or choose a lesser enhancement, which was either 10 years under section 12022.53, subdivision (b), or 20 years pursuant to section 12022.53, subdivision (c). Defendant's counsel asked that the trial court consider imposing the 10-year enhancement; it would be easier on his family if he was given a lesser sentence. He already had to serve 15 years to life for the second degree murder. Defendant's counsel stated, "I think we can agree that the Court is not going to strike the entire enhancement of 25-to-life," and that imposing 10 years was "the best way to resolve this for everyone's concern." The prosecutor noted that although the victim's family had stated on the record that they forgave defendant, they had not forgotten that defendant killed the victim.

The trial court stated that it was still concerned about the callous nature of the shooting. The trial court also noted that the only thing in front of it was whether to impose the lesser enhancements. Defendant shot the victim 10 times in the back. Further, after the shooting, defendant left and did not provide aid to the victim. The trial

6

court stated, "But ten times, that was pretty callous." Moreover, defendant had easy access to guns as shown by possessing a different gun just days after the murder.

The trial court stated, "So his easy access to weapons, that also causes me concern, in that, again, if he were able to get out, then what would—you know, either his callousness in using them or his easy access to them." The trial court also noted that defendant had been "picking up crimes," which included either harassing or robbing a woman. Defendant's counsel responded that defendant had been young at the time of the crime and that by coming to court and apologizing to the victim's family, he showed his maturity. At the time of the crime, his frontal lobes were not fully developed, and he was not making good decisions. It was a "horrible decision" rather than being callous. Further, defendant already had a life sentence for the second degree murder. He was 26 years old and would spend a majority of his life in prison even if the lesser enhancements were imposed. Defendant's counsel was not aware of any discipline problems while defendant was serving his time in prison.

The prosecutor objected to counsel's statement that defendant was doing well in prison. Those records had not been submitted to the court. There was no information about his prison record. The prosecutor also noted that when apologizing to the family, he also put the blame on the victim indicating he had a gun and he had to shoot him. Further, the jury had found there were no grounds for self-defense. The trial court inquired as to whether defendant had been participating in any programs in prison. Counsel responded that defendant was involved in drug classes and was working on his GED.

7

The trial court sentenced defendant, noting that the "same issues that caused me some concern initially still cause me a concern now." The trial court reviewed the facts of the case. The trial court was concerned that defendant shot the victim 10 times with a .45 caliber handgun, which was a high caliber gun. Some of those shots were to the victim's back. The trial court also considered that defendant had easy access to guns. The trial court stated, "I have given this a lot of consideration. But the same things that troubled me before still trouble me now. And again, I have to think of the safety of the community, safety to others. And here, with easy access, his callous nature, in that he shot this individual ten times." He shot his best friend 10 times with a .45-caliber gun. It was callous and "very, very brutal." The trial court understood it could impose the lesser enhancement but it chose not to based on the nature in which the victim was shot and the callous nature in which the victim was left by defendant after the shooting. It would not be appropriate to strike the enhancement or impose the lesser enhancement. Defendant's counsel advised the trial court that he understood only eight shots were fired; the trial court found this did not make a difference.

Defendant was sentenced to 15 years to life for the second degree murder, plus 25 years to life for the weapon use enhancement under section 12022.53, subdivision (d), for a total sentence of 40 years to life. The trial court reiterated the sentence was based on the "brutal" and "callous" nature of the crime.

8

B.    ANALYSIS

Section 12022.53 provides three different sentence enhancements for the personal use of a firearm in the commission of enumerated offenses: a 10-year enhancement for the personal use of a firearm (§ 12022.53, subd. (b)); a 20-year enhancement for the personal and intentional discharge of a firearm (§ 12022.53, subd. (c)); and a 25-year-to-life enhancement for the personal and intentional discharge of a firearm causing great bodily injury or death (§ 12022.53, subd. (d)).

In *Tirado*, *supra*, 12 Cal.5th 688, the court found that subdivision (j) of section 12022.53 authorizes courts to impose a lesser firearm enhancement after the court has exercised its discretion to strike a greater firearm enhancement under section 12022.53, subdivision (h), provided the facts required to prove the lesser enhancement were alleged and found true by the trier of fact. (*Tirado*, at pp. 699-701.) The *Tirado* court found, "When an accusatory pleading alleges and the jury finds true the facts supporting a section 12022.53(d) enhancement, and the court determines that the section 12022.53(d) enhancement should be struck or dismissed under section 12022.53(h), the court may, under section 12022.53(j), impose an enhancement under section 12022.53(b) or (c)." (*Id.* at p. 700, fn. omitted.) Defendant makes no claim the trial court abused its discretion by rejecting the lesser enhancement. Instead, he claims that despite his counsel failing to bring to the trial court's attention its ability to strike the weapon use enhancement under section 1385, subdivision (c)(2)(C), he was entitled to dismissal of the firearm enhancement under that section.

9

"Effective January 1, 2022, Senate Bill No. 81 (2021-2022 Reg. Sess.) amended section 1385 to include subdivision (c).  [Citation.]  Section 1385(c)(1) provides that '[n]otwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.'  [Citation.]  Section 1385(c)(2) provides as follows:  'In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.  'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.' "  (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 295 (*Mendoza*).)  These mitigating circumstances include, relevant here, in section 1385, subdivision (c)(2)(C), that, "The application of an enhancement could result in a sentence of over 20 years.  In this instance, the enhancement shall be dismissed."

"[C]onsideration of the mitigating factors in section 1385(c)(2) is not required if the court finds that dismissal of the enhancement would endanger public safety." (*Mendoza*, *supra*, 88 Cal.App.5th at p. 297.)  This includes section 1385, subdivision (c)(2)(C) in which this court previously found "does not mandate dismissal of an enhancement when the court finds that dismissal would endanger public safety."

(*Mendoza*, at p. 291.)  "[W]e review for abuse of discretion the trial court's decision not to strike a sentence enhancement under section 1385." (*Id.* at p. 298.)

### 1.     FORFEITURE

The People contend that defense counsel's failure to object in the lower court on the ground that the trial court did not properly exercise its discretion because it failed to consider section 1385, subdivision (c)(2), forfeits the claim on appeal.  " '[C]omplaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal.' [Citation.] 'Although the court is required to impose sentence in a lawful manner, counsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing.' " (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 225 (*Gonzalez*).) Defendant's counsel did not advise the trial court it should consider section 1385, subdivision (c)(2), at the time of resentencing despite the fact that the section was modified in 2022 and sentencing took place in 2024.

Defendant asks this court to consider the claim on the merits despite the failure of defense counsel to object, and if this court does not address the merits due to forfeiture of the claim, he received ineffective assistance of counsel.  This is not the rare case where the failure to object should be excused.  Section 1385 had been modified for two years and defendant's counsel should have raised the issue at the time of sentencing as it was clearly applicable to the case.  Moreover, this court ordered that all newly enacted sentencing laws be considered at the time of resentencing alerting defense counsel it

11

should be prepared to argue all possible new sentencing laws which may apply. We will consider defendant's claim that he received ineffective assistance of counsel.

## 2. *INEFFECTIVE ASSISTANCE OF COUNSEL*

The burden of proving ineffective assistance of counsel is on the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) "To establish a claim of ineffective assistance of counsel, [a defendant] must show that his counsel's performance fell below an objective standard of reasonableness and prejudice. [Citation.] There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. [Citation.] Prejudice occurs where there is a reasonable probability that, but for counsel's unprofessional errors, the defendant would have achieved a more favorable outcome. [Citations.] A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." (*People v. O'Bannon* (2024) 105 Cal.App.5th 974, 979; see also *Strickland*, at pp. 687-688, 694.)

Initially, as noted by defendant, a reasonably competent attorney would have researched any newly enacted sentencing laws prior to the resentencing, especially in light of this court's statement in the Opinion that the trial court should consider all newly enacted laws. Moreover, there could be no tactical reason for defendant's trial counsel to not raise the issue of section 1385, subdivision (c)(2), at the time of resentencing. The provision clearly applied to defendant and was not in conflict with defendant's claim that the trial court should impose the lesser enhancement. Performance by defendant's counsel was "below an objective standard of reasonableness." (*People v. O'Bannon*, *supra*, 105 Cal.App.5th at p. 979.)

12

As for prejudice, the People contend defendant has not met his burden of showing prejudice because the trial court would not have struck the enhancement had it been aware of its discretion pursuant to section 1385, subdivision (c)(2). "[W]hen a trial court misapprehends the scope of its sentencing discretion, a remand is not warranted if 'the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion." ' " (*Gonzalez, supra,* 103 Cal.App.5th at p. 231.) In assessing whether the trial court would have struck the firearm enhancement if it had been aware of section 1385, subdivision (c)(2)(C), we consider the reasons the trial court did not strike or impose a lesser enhancement at the time of resentencing. The record supports that the trial court found that releasing defendant at any time would present a danger to society.

"Although the current dangerousness of the defendant is an appropriate factor to consider, as it will have some bearing on whether dismissing the enhancement would endanger the public, a crucial part of the inquiry is how the dismissal of the enhancement will impact the length of the defendant's sentence. A currently dangerous defendant who will be released from prison within a short time frame might be found by the trial court to pose a greater danger to the public than a defendant who is currently dangerous but who has no prospect of release from prison until he is elderly. [Citation.] Further, an inquiry into whether public safety will be endangered by the dismissal of an enhancement for a defendant serving a lengthy indeterminate sentence should also take into account that the defendant's release from prison is contingent on review by the Board of Parole Hearings (and for murder convictions, by the Governor), who will have the opportunity to assess

13

the defendant's dangerousness at that time. [Citation.] That future review will act as a safety valve against a release that would endanger the public and is relevant to a trial court's analysis of whether the dismissal of an enhancement imposed on a defendant serving an indeterminate prison term will endanger public safety." (*Gonzalez*, *supra*, 103 Cal.App.5th at p. 228, fn. omitted.)

As such, " 'determining whether resentencing a defendant poses an unreasonable risk of danger to society is necessarily a forward-looking inquiry. When determining whether resentencing poses an unreasonable risk of danger, the trial court must look to when a defendant would be released if the petition is granted and the defendant is resentenced.' " (*Gonzalez*, *supra*,103 Cal.App.5th at p. 229.)

Here, the trial court was concerned that defendant presented a danger to society based on the callous and brutal nature of the crime. The trial court expressed that it was concerned that defendant had easy access to firearms and was concerned that if "he were able to get out" either his callousness in using guns or his easy access to them posed a danger to society. The trial court's ruling did not singularly focus on the current danger defendant posed to society. Rather, it expressly referred to the danger his release presented either at this point or in an unspecified near future.[5] The trial court's decision was based on whether a lesser enhancement was appropriate. It determined that a reduction to even 35 years to life was inappropriate based on the callousness of the crime, the brutal nature of the crime, and the fact that defendant posed a danger to society.

---

[5] In *Gonzalez*, the trial court specifically stated that the defendant "presently" presented a danger to society. (*Gonzalez*, *supra*, 103 Cal.App.5th at p. 231.)

14

Moreover, in *Gonzalez*, although it advised that the trial court should consider that a safety valve exists for indeterminate sentences due to the review by the Board of Parole Hearings, it also stated that "We do not suggest that a trial court is permitted to delegate its judgment regarding a defendant's future threat to public safety to the Board of Parole Hearings." (*Gonzalez, supra,* 103 Cal.App.5th at p. 228, fn. 10.) It also noted that this was just one of the relevant factors in determining whether dismissal of an enhancement would endanger public safety. (*Id.* at p. 229.)

Defendant insists that the trial court did not consider whether looking forward, public safety would be endangered due to an earlier release from prison. As noted, the trial court was looking at striking the enhancement, which would mean defendant would serve a sentence of 15 years to life, or whether to impose a lesser enhancement, which would mean serving 25 years to life or 35 years to life. It declined all three of these sentences based on its finding that defendant's crime was particularly brutal and callous. It was concerned that "if he were able to get out"—without specifying the time period— he would have easy access to guns and was willing to use guns in a callous nature. This finding supports that the trial court, had it been aware of section 1385, subdivision (c)(2)(C), at the time of the resentencing, it would not have struck the weapon use enhancement.

We further note that in *People v. Walker* (2024) 16 Cal.5th 1024, the California Supreme Court noted that public safety is not the only consideration that may justify imposition of an enhancement when a mitigating circumstance applies under section 1385, subdivision (c)(2). It found, "[l]ooking at subsection (2) of subdivision (c)

15

sequentially, it is clear that the structure does not 'presume' [citation] an enhancement should be dismissed whenever an enumerated mitigating circumstance is present, but instead 'the ultimate question before the trial court remains whether it is in the furtherance of justice to dismiss an enhancement' [citation] and this 'furtherance of justice' [citation] inquiry requires a trial court's ongoing exercise of 'discretion' [citation].  Thus, notwithstanding the presence of a mitigating circumstance, trial courts retain their discretion to impose an enhancement based on circumstances "long deemed essential to the "furtherance of justice" inquiry.' " (*Walker*, at p. 1033.)  "Stated simply, if the court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement. But ultimately, the court must determine whether dismissal is in furtherance of justice." (*Walker*, at p. 1036.)  Here, the trial court considered other factors in addition to public safety, including the callousness of the crime and the brutal nature of the crime.  Under *Walker*, it is inconceivable that the trial court would find that dismissal of the section 12022.53, subdivision (d), weapon use enhancement would be in "furtherance of justice."

The record supports that the trial court would have found that defendant was a danger to society even if it considered the mitigating factor in section 1385, subdivision (c)(2)(C).  It further found that the callousness and brutal nature of the crime warranted the 40-years-to-life sentence.  There is no likelihood the trial court would have exercised its discretion differently had the trial court been aware of its discretion pursuant to section 1385, subdivision (c)(2).

Accordingly, defendant has failed to show prejudice to support his ineffective assistance of counsel claim.  Remand for resentencing is unnecessary.

**DISPOSITION**

The judgment is affirmed in full.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER

Acting P. J.

We concur:

CODRINGTON

J.

FIELDS

J.

17